## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARY BOYLE, ALEXANDER HOEHN-SARIC, and RICHARD TRUMKA JR.,

     *Plaintiffs-Appellees*,

     v.

DONALD J. TRUMP, in his official capacity as President of the United States; SCOTT BESSENT, in his official capacity as Secretary of the Treasury; RUSSELL VOUGHT, in his official capacity as Director of the Office of Management and Budget; and PETER A. FELDMAN, in his official capacity as Acting Chairman of the U.S. Product Safety Commission,

     *Defendants-Appellants*.

Case No. 25-1687

## PLAINTIFFS-APPELLEES' OPPOSITION TO DEFENDANTS-APPELLANTS' MOTION FOR A STAY PENDING APPEAL AND AN ADMINISTRATIVE STAY

Just over a month ago, President Donald J. Trump purported to terminate three Commissioners of the Consumer Product Safety Commission (CPSC) who had been duly appointed by his predecessor and confirmed by the Senate—Plaintiffs Mary Boyle, Alexander Hoehn-Saric,

1

and Richard Trumka Jr. Although the Consumer Product Safety Act
(CPSA) authorizes a Commissioner's removal only for neglect of duty or
malfeasance in office, the President has at no time identified any neglect
or malfeasance on Plaintiffs' part, nor could he.

Following full merits briefing and argument, the district court held
that Plaintiffs' terminations exceeded the President's lawful authority. It
thus declared the terminations unlawful and enjoined three subordinate
officers—Defendants Scott Bessent, Secretary of the Treasury; Russell
Vought, Director of the Office of Management and Budget; and Peter A.
Feldman, Acting Chairman of the CPSC—from effectuating them.

This Court should deny Defendants' motion to stay the district
court's order. Defendants are not entitled to a stay unless they carry the
burden of showing that they are likely to succeed on the merits of their
appeal, that they will suffer irreparable harm absent a stay, and that the
balance of equities and public interest support a stay. Defendants cannot
make any of the requisite showings.

On the merits, the district court properly applied the Supreme
Court's binding decision in *Humphrey's Executor v. United States*, 295
U.S. 602 (1935), to conclude that statutory tenure protections for CPSC

Commissioners do not unconstitutionally impinge on the President's Article II power to remove executive officers. Defendants' constitutional arguments ask this Court to read *Humphrey's Executor* so narrowly as to drain it of all precedential value—notwithstanding the Supreme Court's frequent assurances that it remains good law. Both the Fifth and Tenth Circuits have joined the district court in concluding that *Humphrey's Executor* applies to the CPSC. And Defendants' suggestion that equitable relief is categorically unavailable to remedy the unlawful termination of independent agency heads finds no support in historic practice and would render statutory tenure protections meaningless in practice.

As for the remaining stay factors, the district court concluded that the equities favor allowing Plaintiffs to fulfill the roles to which they were lawfully appointed. Defendants offer no rejoinder to the court's discussion. Instead, they emphasize the President's authority to assert executive power. But if this Court concludes, as it should, that Defendants have not established a likelihood that the Constitution requires CPSC Commissioners to be subject to the President's at-will removal power, the President suffers no legitimate harm when lawfully appointed Commissioners serve in their roles as directed by the CPSA.

3

## STATEMENT

## I.    Statutory background

Congress enacted the CPSA in 1972 to "protect the public against unreasonable risks of injury associated with consumer products" and to further related aims. 15 U.S.C. § 2051(b)(1). As established by the statute, the CPSC consists of five Commissioners who are nominated by the President and confirmed by the Senate. *Id.* § 2053(a). Each Commissioner must have "background and expertise in areas related to consumer products and protection of the public from risks to safety." *Id.* Among other things, Commissioners are responsible for promulgating standards for consumer-product safety, *id.* § 2056, recalling unreasonably hazardous products from the market, *id.* § 2057, and conducting product-safety investigations and research, *id.* § 2076.

To ensure that the CPSC remains "unfettered by political dictates, self-interested industry pressure or blind consumer zeal," 122 Cong. Rec. S15211 (daily ed. May 24, 1976), Congress established it as an "independent regulatory commission," 15 U.S.C. § 2053(a), with statutory guardrails to protect the CPSC from undue political pressures. Congress ensured that each President would have the opportunity to

4

influence, but not control, the composition of the CPSC by providing that Commissioners would serve staggered, seven-year terms, *id.* § 2053(b)(1), and that any Commissioner appointed to fill a vacancy created by the premature departure of a predecessor would be appointed only for the remainder of the predecessor's term, *id.* § 2053(b)(2). The CPSA specifies that "[n]ot more than three of the Commissioners shall be affiliated with the same political party." *Id.* § 2053(c). And Commissioners may be "removed by the President" before the end of their terms only "for neglect of duty or malfeasance in office but for no other cause." *Id.* § 2053(a).

## II.    Factual and procedural background

**A.** Plaintiffs Boyle, Hoehn-Saric, and Trumka, each of whom has an extensive professional background in consumer-protection issues, were all nominated by President Joseph R. Biden Jr. and confirmed by the Senate to serve as CPSC Commissioners. Dkt. 18-1 ¶ 1.[1] Commissioner Boyle was confirmed on June 22, 2022, to serve out the remainder of a predecessor's term, expiring on October 27, 2025. *Id.* ¶ 2. Commissioner Hoehn-Saric was confirmed on October 7, 2021, to serve out the

---

[1] The factual background is largely drawn from the statement of undisputed facts filed with Plaintiffs' motion for summary judgment. Defendants have not disputed these facts. *See* Dkt. 21-2.

remainder of a predecessor's term, expiring on October 27, 2027. *Id.* ¶ 3. And Commissioner Trumka was confirmed on November 16, 2021, to serve a seven-year term, expiring on October 27, 2028. *Id.* ¶ 4. Plaintiffs have performed ably in their roles, have committed no neglect of duty or malfeasance in office, and have never been accused by either President Biden or President Trump of such neglect or malfeasance. *Id.* ¶ 5.

On May 8, 2025, Commissioners Boyle and Trumka received emails from the Deputy Director of Presidential Personnel, which stated, in full: "On behalf of President Donald J. Trump, I am writing to inform you that your position on the Consumer Product Safety Commission is terminated effective immediately. Thank you for your service." *Id.* ¶¶ 6–7. The following day, when Commissioner Hoehn-Saric and two of his staff members arrived for work at CPSC headquarters, Commissioner Hoehn-Saric was informed that the President had terminated him and that he should leave the premises. *Id.* ¶¶ 9–10. At no point was neglect of duty or malfeasance in office cited as a reason for the termination of any Plaintiff. *Id.* ¶¶ 8, 11–12.

Thereafter, Plaintiffs were barred from entering their offices at CPSC without an escort, accessing their CPSC email accounts, using

6

their government-issued phones, logging on to CPSC's computer network, or accessing their electronic files. *Id.* ¶ 13. While Plaintiffs were prevented from serving in their roles, the other two Commissioners proceeded to take consequential actions that Plaintiffs believed would have a substantial adverse impact on consumer safety and the future of the CPSC. For example, in Plaintiffs' absence, the two Commissioners prepared to implement staff cuts and reorganizations that Plaintiffs believed would exacerbate existing understaffing problems and compromise the CPSC's ability to function, *id.* ¶¶ 17–19, stalled the progress of product-safety rules that Plaintiffs viewed as necessary to protect the public, *id.* ¶¶ 23–24, 27–28, canceled budgetary and planning meetings, *id.* ¶ 29, voted to withdraw a Notice of Proposed Rulemaking for safety standards that Plaintiffs had supported, *id.* ¶ 24, and moved to prioritize the interests of industry over consumer safety, *id.* ¶¶ 25–26. Plaintiffs would have opposed these measures had they not been barred from their roles. *Id.* ¶¶ 18, 22, 24, 26.

**B.** On May 21, Plaintiffs filed suit against President Trump, Secretary Bessent, Director Vought, and Acting Chairman Feldman in their official capacities. Plaintiffs claimed that President Trump had

acted ultra vires and in violation of the CPSA by terminating them absent neglect of duty or malfeasance in office and that Defendants Bessent, Vought, and Feldman acted ultra vires and in violation of the CPSA by taking action to effectuate their terminations, including by obstructing their access to CPSC staff and resources and by withholding their pay and benefits. As relief, Plaintiffs sought a declaration that their terminations were unlawful and an injunction barring Defendants Bessent, Vought, and Feldman from effectuating the terminations.

The parties filed cross-motions for summary judgment. In a June 13 memorandum opinion and order, the district court granted Plaintiffs' motion, denied Defendants' cross-motion, and entered the requested declaratory and injunctive relief. Dkt. 24–25. "[A]greeing with several other courts," including the Fifth and Tenth Circuit Courts of Appeals, the district court concluded that the CSPA's tenure protections are "not inconsistent with Article II." Dkt. 24 (Mem. Op.) at 14. The court acknowledged that Article II "generally" confers authority on the President "to remove executive officials." *Id.* at 7 (quoting *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020)). But it noted that "the President's power of removal is not absolute," *id.*, and that *Humphrey's Executor*, a

1935 opinion that upheld statutory tenure protections for members of the Federal Trade Commission (FTC), creates an exception for "multimember bodies with 'quasi-judicial' or 'quasi-legislative' functions," *id.* (quoting *Seila Law*, 591 U.S. at 217). Explaining that "the CPSC closely resembles the 1935 FTC in both structure and function," the court concluded that the CPSC "qualifies for the *Humphrey's Executor* exception" and that the CPSA's statutory "restriction against Plaintiffs' removal … does not offend the President's Article II power." *Id.* at 23. Because the President undisputedly violated that restriction, *id.* at 13–14, the court held that Plaintiffs were entitled to judgment as a matter of law, *id.* at 23.

The court then held that Plaintiffs were entitled to their requested relief. Declaratory relief, the court found, was "appropriate" to "clarify and settle the parties' legal relationships." *Id.* at 24. As for injunctive relief, the court found that "Plaintiffs have suffered irreparable harm" from being "unlawfully barred from participating in ongoing, consequential decisions of the CPSC that will substantially impact Commission operations and its work on behalf of the public." *Id.* at 26. The court explained that this harm could not "be redressed adequately through money damages" because, absent an injunction, "Plaintiffs

9

would be prevented from serving out the remainder of their limited terms and therefore forever lose the opportunity to fulfill the[ir] statutory duties." *Id.* at 27. And it concluded that an injunction "is favored by the balance of relevant hardships and does not run counter to the public interest" because "[d]epriving th[e] five-member Commission of three of its sitting members threatens severe impairment of its ability to fulfill its statutory mandates and advance the public's interest in safe consumer products." *Id.* at 28.

Responding to Defendants' argument that the court "lack[ed] the equitable power to order Plaintiffs' reinstatement," the court explained that this argument "misconstrue[d] the equitable relief" Plaintiffs sought. *Id.* at 25. Specifically, Plaintiffs "d[id] not seek to enjoin the President to reappoint them," but "only to enjoin the President's subordinates from obstructing their performance of their duties as CPSC Commissioners and their access to the resources necessary for such performance." *Id.* In any event, the court observed, "[e]ven if de facto reinstatement" of the sort Plaintiffs sought was "unavailable as a form of equitable relief, it is available alternatively by a writ of mandamus." *Id.*

at 29. And, under the circumstances of this case, the court held, "issuance of a writ of mandamus would be right and just." *Id.* at 30.

**C.** Shortly after the district court issued its opinion, the CPSC's General Counsel announced that Plaintiffs were "fully reinstated to the same position, with the same rights and privileges, as they held before the President terminated them." Dkt. 29-1 ¶ 2 & Exh. A. Since then, Plaintiffs and their staff have returned to their offices, regained access to their files and other resources, and conducted substantive business. *Id.* ¶¶ 3–7. In short, Plaintiffs are presently serving in the Commissioner roles that the district court held they are legally entitled to occupy.

Meanwhile, in the late afternoon on June 16, three days after the district court entered its final order, Defendants moved the district court for a stay pending this appeal. *See* Dkt. 27. The following evening—after Plaintiffs had filed their opposition to the district-court stay motion, *see* Dkt. 29—Defendants asked the district court for leave to file a declaration describing steps that Plaintiffs had taken following their reinstatement in response to actions that the CPSC had purported to take under the authority of only two Commissioners (which is less than a quorum, *see* 15 U.S.C. § 2053(d)) while Plaintiffs were unlawfully

11

barred from serving in their roles. *See* Dkt. 31. Hours later, Defendants filed a stay motion in this Court. Defendants' stay motion and motion for leave to file the declaration remain pending in the district court.

## LEGAL STANDARD

A stay "is not a matter of right," but rather "an exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). The party requesting a stay "bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. Specifically, the moving party must make "a strong showing that [it] is likely to succeed on the merits," that it "will be irreparably harmed absent a stay," that a stay will not "substantially injure the other parties interested in the proceeding," and that the "public interest" supports a stay. *Id.* at 426 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

## ARGUMENT

Defendants bear the burden of establishing each of the four factors needed to justify a stay pending appeal. They can establish none of them.

I.    **Defendants cannot establish a strong likelihood of success on the merits.**

   A.    **Defendants cannot show that Plaintiffs' purported terminations were lawful.**

Defendants have never argued that Plaintiffs' terminations were consistent with the CPSA's provision stating that CPSC Commissioners may be removed "for neglect of duty or malfeasance in office but for no other cause." 15 U.S.C. § 2053(a). They contend only that this statutory provision unconstitutionally restricts the President's Article II removal power. The district court rejected this argument after merits briefing and argument, and Defendants cannot establish that this Court is likely to reverse.

The district court's constitutional holding follows directly from *Humphrey's Executor*, a binding precedent that the Supreme Court has recently—and repeatedly—reaffirmed. *See Collins v. Yellen*, 594 U.S. 220, 250–51 (2021) (noting the continuing vitality of *Humphrey's Executor*); *Seila Law*, 591 U.S. at 204 (declining to "revisit" the precedent); *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 483 (2010) (same). In *Humphrey's Executor*, the Supreme Court unanimously upheld the constitutionality of a statutory provision

that barred the President from removing the members of the FTC except for "inefficiency, neglect of duty, or malfeasance in office." 295 U.S. at 619 (quoting 15 U.S.C. § 41); *see id.* at 631–32. As the Supreme Court held, "[t]he authority of Congress, in creating quasi legislative or quasi judicial agencies, to require them to act in discharge of their duties independently of executive control cannot well be doubted." *Id.* at 629. In the case of "an administrative body created by Congress to carry into effect legislative policies embodied in [a] statute in accordance with the legislative standard therein prescribed," *id.* at 628, the Court found it "plain under the Constitution that illimitable power of removal is not possessed by the President," *id.* at 629. As the Court held, Congress has "power to fix the period during which" the members of such bodies "shall continue, and to forbid their removal except for cause in the meantime," allowing them to "maintain an attitude of independence against the [President's] will." *Id.*

As the district court found, "the CPSC closely resembles the 1935 FTC in both structure and function." Mem. Op. 23. Like the FTC, the CPSC is "a multimember body of experts, balanced along partisan lines." *Seila Law*, 591 U.S. at 216; *see Humphrey's Executor*, 295 U.S. at 619–20 (describing the structure and partisan balance of the FTC); 15 U.S.C.

14

§ 2053(a) (providing that the CPSC "consist[s] of five Commissioners" with "background and expertise in areas related to consumer products and protection of the public from risks to safety"); *id.* § 2053(c) (providing that "[n]ot more than three [CPSC] Commissioners shall be affiliated with the same political party"). And like the FTC, the CPSC performs "quasi legislative and quasi judicial" functions. *Humphrey's Executor*, 295 U.S. at 629. On the legislative side, the FTC and CPSC both hold "wide powers of investigation," *id.* at 621 (FTC); 15 U.S.C. § 2076 (CPSC), and the authority to issue substantive regulations. *Compare* Federal Trade Commission Act, Pub. L. No. 63-203, § 6(g), 38 Stat. 717, 722 (1914), *codified as amended at* 15 U.S.C. § 46(g), *with* 15 U.S.C. § 2056(a) (empowering the CPSC to promulgate "consumer product safety standards"). On the judicial side, the FTC and CPSC both hold authority to conduct administrative adjudications within the narrow confines of the statutes that they administer. *Compare Humphrey's Executor*, 295 U.S. at 620–21 (describing the FTC's power to issue a cease-and-desist order upon finding that a party has engaged in an unfair method of competition), *with* 15 U.S.C. §§ 2064(c)–(d) (authorizing the CPSC to order remedial measures upon finding a substantial product hazard).

15

Defendants contend that *Humphrey's Executor* does not apply here because the CPSC performs "quintessential executive duties." Stay Mot. 12. But despite reading *Humphrey's Executor* to apply only to "multimember boards that do not exercise *any* executive power," *id.* at 15 (emphasis added), Defendants also concede that "the 1935 FTC" at issue in *Humphrey's Executor* "could today be understood as exercising executive power," *id.* at 16. And indeed, the Supreme Court has described *Humphrey's Executor* as stating an "exception[]" to the President's "power to remove … those who wield *executive* power on his behalf." *Seila Law*, 591 U.S. at 204 (emphasis added); *see Free Enterprise Fund*, 561 U.S. at 495 (describing *Humphrey's Executor* as involving "protected tenure separat[ing] the President from an officer exercising *executive* power" (emphasis added)). That the CPSC is an executive agency, as that term is used today, accordingly does not bring it outside the scope of *Humphrey's Executor*.

The district court, then, was right to observe that "the Supreme Court [has] stated that assessing the constitutionality of a removal restriction should not focus on 'rigid' categorization of an official's powers as 'purely executive,' 'quasi-legislative,' and 'quasi-judicial,'" but should

take an agency's "structure" into account as well. Mem. Op. 20 (quoting *Morrison v. Olson*, 487 U.S. 654, 689 (1988)). And Defendants have identified no distinction whatsoever between the structure of the CPSC and that of the 1935 FTC—a structure that, as the district court found, is "well-established in the history and tradition of the federal government." *Id.* at 22.

Using an artful ellipsis, Defendants characterize the district court as having held that "the 'degree to which the CPSC wields executive power … does not determine whether' the statutory removal restriction 'interferes with the President's exercise of Article II powers and duties.'" Stay Mot. 17 (omission in original; quoting Mem. Op. 21). But Defendants omit the word "alone." *See* Mem. Op. 21. And by doing so, they misrepresent the district court's holding. The court's statement that the nature of the CPSC's powers are not "*alone*" dispositive is fully supported by the Supreme Court's decision in *Seila Law*. There, the Supreme Court declined to extend the holding of *Humphrey's Executor* to the Consumer Financial Protection Bureau (CFPB), an agency headed by a single director. *See Seila Law*, 591 U.S. at 218. As the Court emphasized, the FTC is "a multimember body of experts, balanced along partisan lines,

that perform[s] legislative and judicial functions," *id.* at 216, whereas the CFPB's "single Director … cannot be described as a 'body of experts' and cannot be considered 'non-partisan' in the same sense as a group of officials drawn from both sides of the aisle," *id.* at 218 (quoting *Humphrey's Executor*, 295 U.S. at 624). The Court emphasized the dearth of historical instances where Congress has extended for-cause removal protections to "principal officers who wield power alone rather than as members of a board or commission," *id.* at 220, and concluded that "[t]he CFPB's single-Director structure [was] an innovation with no foothold in history or tradition," *id.* at 222. The Court further observed, moreover, that "the CFPB's single-Director configuration [was] incompatible with our constitutional structure," which "scrupulously avoids concentrating power in the hands of any single individual." *Id.* at 222–23; *see id.* at 224 (faulting "[t]he CFPB's single-Director structure" for "vesting significant governmental power in the hands of a single individual"). In light of these considerations, the Court held that "the CFPB's leadership by a single independent Director violates the separation of powers." *Id.* at 232 (plurality opinion).

18

It was against the backdrop of the CFPB's unique structure that the Court described the "significant executive power" wielded by the CFPB's "single Director," *id.* at 220, and held that the exercise of such power created a constitutional problem for an independent director "*acting alone*," *id.* at 238 (emphasis added). The Court did not hold that a *multimember* independent body could not lawfully exercise the level of authority possessed by the CFPB Director. In fact, it said the opposite: In discussing remedy, the Court stated that the remedy that it ordered (severance and invalidation of the Director's for-cause removal protection) did not "foreclose Congress from pursuing alternative responses to the [constitutional] problem—for example, converting the CFPB into a multimember agency." *Id.* at 237 (plurality opinion).[2]

The Supreme Court's order in *Trump v. Wilcox*, 145 S. Ct. 1415 (2025), confirms the point. There, the Court found that the government was "likely to show" that two multimember independent agencies—the National Labor Relations Board (NLRB) and the Merit Systems

---

[2] Although only a plurality of Justices joined this portion of *Seila Law*, four dissenting Justices would have upheld the CFPB Director's statutory removal protections as consistent with the Constitution. Necessarily, those Justices would also discern no constitutional flaw with an independent multimember body that exercised the Director's powers.

Protection Board (MSPB)—"exercise[d] considerable executive power." *Id.* at 1415. The Court nonetheless held that a "recognized exception" to the President's at-will removal authority—plainly referring to *Humphrey's Executor*—may apply. *Id.* To the extent that *Wilcox*'s three-sentence discussion of the merits offers guidance, it thus counsels against Defendants' argument that an agency's exercise of significant executive power forecloses application of *Humphrey's Executor*.

Moreover, contrary to Defendants' argument, that the Supreme Court in *Wilcox* decided to stay reinstatement of an NLRB member and an MSPB member despite recognizing that *Humphrey's Executor* might apply does not "resolve[]" the issue of Defendants' likelihood of success here. Stay Mot. 18. While Defendants claim that the CPSC wields "equal if not greater" power than the NLRB and MSPB, *id.* at 13, they offer no argument in support, although they bear the burden of establishing a strong showing of likely success on the merits. Indeed, although Defendants describe some of the CPSC's powers, *id.* at 12–13, and state generally that they go "beyond those discussed in *Humphrey's Executor*," *id.* at 16, they do not identify which of the CPSC's powers differ from those of the 1935 FTC and why those differences are meaningful. Rather,

Defendants suggest applying "only a very narrow reading" of *Humphrey's Executor*, such that *any* distinction between the CPSC and the 1935 FTC forecloses application of the precedent. *Id.* at 14 (quoting *Severino v. Biden*, 71 F.4th 1038, 1050 (D.C. Cir. 2023) (Walker, J., concurring)). But unless and until the Supreme Court holds otherwise, this Court "must apply [*Humphrey's Executor*] neither narrowly nor liberally—only faithfully." *United States v. Johnson*, 921 F.3d 991, 1001 (11th Cir. 2019) (en banc).

Ultimately, as both Courts of Appeals to have considered this precise issue have held, *Humphrey's Executor* applies foursquare to the CPSC. *See Consumers' Research v. CPSC*, 91 F.4th 342, 351–56 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 414 (2024); *Leachco, Inc. v. CPSC*, 103 F.4th 748, 760–63 (10th Cir. 2024), *cert. denied*, 145 S. Ct. 1047 (2025). And the Supreme Court has twice declined to review those holdings. Defendants offer no reason why this Court is likely to depart from the consensus view.

**B.    Defendants cannot show that the district court abused its discretion in granting declaratory and equitable relief.**

Defendants have also not made the requisite strong showing that they are likely to succeed on their alternative argument that the district court's remedy was an abuse of discretion.

Defendants principally contend that the relief the district court ordered impinges on the President's constitutional authority. Stay Mot. 18–19, 20, 22. This contention, however, presupposes Defendants' success on the merits of their constitutional argument. If the Court agrees with Plaintiffs that Defendants have *not* shown that they are likely to establish that Congress's decision to establish the CPSC as an independent multimember expert body violates Article II, then Defendants are not likely to show that the district court's enforcement of that lawful legislative decision poses separation-of-powers problems.

Indeed, holding that the district court's remedy exceeded the court's discretion would effectively abrogate the merits holding of *Humphrey's Executor* and render tenure protections for independent multimember agencies ineffectual. Under such circumstances, the President could in practice terminate independent agency heads at will, so long as he

provided them with backpay. *Humphrey's Executor*, though, held that Congress may limit the President's ability to use his "power of removal" to exert "coercive influence" over independent agency heads. 295 U.S. at 629–30. Transforming a statutory guarantee of agency independence into a severance-pay provision would undermine Congress's permissible aims.

Further, Defendants assert that the district court's remedy "exceed[ed] the scope of [its] equitable powers." Stay Mot. 20. The D.C. Circuit, however, which "is no stranger to removal challenges," has "twice recognized that" the sort of relief that the district court ordered—an injunction that bars subordinate executive officers from giving effect to unlawful terminations—"is available and advisable." *Grundmann v. Trump*, 2025 WL 782665, at *13 (D.D.C. Mar. 12, 2025), *appeal filed* (citing *Severino*, 71 F.4th at 1042–43, and *Swan v. Clinton*, 100 F.3d 973, 980 (D.C. Cir. 1996)).

Defendants argue that *Severino* and *Swan* are irrelevant because they addressed "*de facto*" reinstatement only in connection with a removed officer's standing to seek such a remedy. Stay Mot. 22. Redressability, however, is one of "the essential elements of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992), and it must be

demonstrated separately "for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). Had *de facto* reinstatement been categorically unavailable in *Severino* and *Swan*—which both courts held it was not, *Severino*, 71 F.4th at 1042–43; *Swan*, 100 F.3d at 980–81— the plaintiffs would have lacked standing to pursue such relief and the courts would have been constitutionally powerless to consider the plaintiffs' claims.

The D.C. Circuit's recognition that reinstatement is available, moreover, finds support in historic practice. *See, e.g.*, *Delgado v. Chavez*, 140 U.S. 586, 591 (1891) (affirming the grant of equitable relief in a case "by certain parties showing themselves to be *de facto* commissioners to compel [a public official] to respect their possession of the office, discharge his duties …, and not assume to himself judicial functions, and adjudicate against the validity of their title"); *Priddie v. Thompson*, 82 F. 186, 192 (D.W.V. 1897) (entering "an injunction … to restrain [a United States] marshal … from any interference or molestation with [the deputy marshal] in the possession of the office"); *cf. Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582, 589 (1952) (affirming a judgment

enjoining the Secretary of Commerce from implementing a Presidential action that exceeded his constitutional authority).

In any event, irrespective of how this Court rules on the scope of the district court's equitable powers, the district court held in the alternative that it would have granted the same relief pursuant to its power of mandamus. Mem. Op. 29–30. Defendants now argue that mandamus relief should not issue, Stay Mot. 23–24, but they made no such argument below, despite Plaintiffs raising mandamus as a basis for relief. *See* Dkt. 18-1 at 20–21. This Court has "repeatedly held" that "issues raised for the first time on appeal generally will not be considered." *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993). Defendants have not carried their burden of showing that this Court is likely even to *consider* their challenge to the district court's alternative remedial holding, let alone that their challenge is likely to succeed.

## II. Defendants cannot establish that they will suffer irreparable harm absent a stay or that the balance of hardships and public interest support a stay.

The district court found that Plaintiffs, who have been duly appointed and confirmed to their roles as CPSC Commissioners, will face irreparable harm if they are "unlawfully barred from participating in

ongoing, consequential decisions of the CPSC." Mem. Op. 26. The court found as well that depriving the CPSC of "three of its sitting members" would compromise the agency's ability to "fulfill its statutory mandates and advance the public's interest in safe consumer products." *Id*. at 28. Defendants do not address the district court's findings on these points, let alone carry their burden of establishing that the balance of hardships and the public interest tip in the opposite direction.

Defendants contend that they will suffer irreparable harm absent a stay because Plaintiffs are "exercising executive power over the President's objection" and they have used that power to further policy positions with which the President apparently disagrees. Stay Mot. 24. As with Defendants' remedial arguments, however, Defendants' arguments on irreparable harm presuppose their success on the merits. If this Court agrees with the district court—as well as the Fifth and Tenth Circuits—that the CPSA's removal protections are constitutional under binding Supreme Court precedent, the President suffers no legitimate injury from Plaintiffs carrying out their functions as Commissioners and exercising their independent judgment to make disinterested, expert decisions as to what policies best serve public safety.

26

Finally, although Defendants rely on the Supreme Court's order granting a stay in *Wilcox*, that order's assessment of the equities militates against a stay here. Under the factual circumstances presented in *Wilcox*, the Supreme Court held that a stay was "appropriate to avoid the disruptive effect of the repeated removal and reinstatement of officers during the pendency of th[e] litigation." 145 S. Ct. at 1415. Here, Plaintiffs are currently serving as Commissioners, and it is Defendants who seek to upend the status quo by preventing them from continuing to serve in the positions that the district court held they are entitled to occupy. Moreover, it is Defendants who bear the burden of establishing that the disruption that would result from the temporary relief they seek would serve the balance of the equities and the public interest. Defendants have not come close to doing so.

## CONCLUSION

The Court should deny Defendants-Appellants' motion for a stay pending appeal and for an administrative stay.

27

Dated: June 19, 2025       Respectfully submitted,

<u>/s/ Nicolas A. Sansone</u>
Nicolas A. Sansone
Stephanie Garlock
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

This opposition complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the opposition exempted by Federal Rule of Appellate Procedure 32(f), it contains 5,076 words.

This opposition also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

<u>/s/ Nicolas Sansone</u>
Nicolas Sansone
*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Opposition to Defendants-Appellants' Motion for a Stay Pending Appeal and an Administrative Stay with the Clerk of Court for the United States Court of Appeals for the Fourth Circuit on June 19, 2025, using the CM/ECF e-filing system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Nicolas Sansone
Nicolas Sansone
*Counsel for Plaintiffs-Appellees*