FILED: July 1, 2025

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 25-1687
(8:25-cv-01628-MJM)

_____

MARY BOYLE; ALEXANDER HOEHN–SARIC; RICHARD TRUMKA JR.,

      Plaintiffs – Appellees,

v.

DONALD J. TRUMP, in his official capacity as President of the United States; SCOTT BESSENT, in his official capacity as Secretary of the Treasury; RUSSELL VOUGHT, in his official capacity as Director of the Office of Management and Budget; PETER A. FELDMAN, in his official capacity as Acting Chairman of the U.S. Consumer Product Safety Commission,

      Defendants – Appellants.

_____

O R D E R

_____

The Court denies the motion for an administrative stay and a stay pending appeal (ECF 13) in this case.

Entered at the direction of Judge Heytens with the concurrence of Judge Gregory and Judge Wynn. Judge Wynn wrote a concurring opinion.

For the Court

/s/ Nwamaka Anowi, Clerk

WYNN, Circuit Judge, concurring:

The Constitution permits Congress, in furtherance of its legislative functions, to create independent agencies staffed by officers shielded from at-will removal—provided that such limitations do not impede the President's ability to faithfully execute the laws. *Humphrey's Executor v. United States*, 295 U.S. 602, 629 (1935). Congress exercised that authority when it created the Consumer Products Safety Commission ("the Commission") as a bipartisan, multi-member independent regulatory commission tasked with protecting the public against unreasonable risks of injury with consumer products. 15 U.S.C. § 2051(b).

In doing so, Congress expressly limited the President's removal authority: a commissioner may be removed only "for neglect of duty or malfeasance in office but for no other cause." *Id.* at § 2053(a).

Here Plaintiff-Commissioners Mary Boyle, Alexander Hoehn-Saric, and Richard Trumka Jr. were, in accordance with statutory law, duly appointed for fixed terms by the President after having been confirmed by the Senate. While serving within those terms, the newly elected President purported to terminate them without finding—or even alleging—any neglect or malfeasance. That action, plainly in conflict with the textual language of the statutory removal protections, rendered the terminations legally ineffective. Thus, upon correctly determining that the newly elected President's actions were ultra vires, the district court issued a permanent injunction and declaratory relief restoring the Plaintiff-Commissioners to their offices.

2

The issue on appeal is whether this Court should stay that injunction pending its appeal. Under the governing law and legal standard, the answer is resoundingly no.

A stay pending appeal is "an exercise of judicial discretion," the propriety of which "is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672–73 (1926)). Our discretion is guided by four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Of these factors, the first two "are the most critical." *Id.* Defendants cannot satisfy any of these factors, particularly not the first.

The Constitution accommodates removal protections for multi-member commissions exercising quasi-legislative and quasi-judicial powers. *Humphrey's Executor*, 295 U.S. at 629. Indeed, the Supreme Court recently distilled the import of *Humphrey's Executor* as "permitt[ing] Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislation and judicial functions and was said not to exercise any executive power." *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 216 (2020).

Defendants argue that *Seila Law* implicitly abrogates, either entirely or in substantial part, *Humphrey's Executor*. But *Seila Law* did no such thing. To the contrary, the Supreme Court in *Seila Law* expressly reaffirmed *Humphrey's Executor* as good law

3

by emphasizing the structural and functional differences between a single-director agency wielding executive power and a multi-member commission with a balanced, bipartisan design.

Here, the Commission, unlike the single-director entity—the Consumer Financial Protection Bureau—at issue in *Seila Law*, is a multimember body. Nor are the other structural factors that rendered the Consumer Financial Protection Bureau beyond presidential control present with the Commission. And the Court made clear that it "d[id] not revisit *Humphrey's Executor* or any other precedent" in *Seila Law*. *Id.* at 228.

The only other circuit courts to have considered the constitutionality of the Commission after *Seila Law* agree with this analysis. *See Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 352 (5th Cir.) (finding that "the Supreme Court, while it has limited *Humphrey's*, has not yet overruled it" and that "[t]he holding from *Humphrey's* controls[ and] authorizes the Commission's structure"), *cert denied*, 145 S. Ct. 414 (2024); *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 762–63 (10th Cir. 2024) (observing that "*Humphrey's Executor* remains good law" and finding "clear precedential support for the CPSC Commissioners' removal protections"), *cert denied*, 145 S. Ct. 1047 (2025).

Defendants make overtures to the Supreme Court's recent stay order in *Trump v. Wilcox*, 145 S. Ct. 1415 (2025) (per curiam). But *Wilcox* does not alter the controlling precedent because the "stay order" in *Wilcox* did "not make or signal any change to" precedent and was "not a ruling on the merits." *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (mem.) (Kavanaugh, J., concurring in grant of application for stays). And "an

4

applicant's likelihood of success must be made under 'existing law.'" *NetChoice, LLC v. Paxton*, 142 S. Ct. 1715, 1716 (2022) (mem.) (Alito, J., dissenting from grant of application to vacate stay) (quoting *Merrill*, 142 S. Ct. at 882 (Roberts, C.J., dissenting from grant of application for stays)). Indeed, *Wilcox* itself explicitly stated that it "d[id] not ultimately decide in this posture whether the NLRB or MSPB" were constitutionally required to permit the President to remove their officers at his pleasure, because "that question [was] better left for resolution after full briefing and argument." 145 S. Ct. at 1415. So, the distinguishable stay order in *Wilcox* is not enough to tilt the likelihood-of-success analysis here.*

As the district court thoroughly explained, the Commission's statutory removal protections remain constitutional under *Humphrey's Executor* and its progeny. That precedent remains binding on this Court unless and until the Supreme Court overrules it. *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). Because Defendants' likelihood of success on the merits has been so thoroughly foreclosed by existing case law, the remaining factors can be handled with much more alacrity.

Defendants have also failed to establish irreparable injury absent a stay. The district court's order only restored the Commission to its status quo ante—the very state of affairs that governed before May 8, 2025, and under which every administration has operated

---

* As Defendants have not demonstrated a likelihood of success on the merits regarding their claim that the removal protections for the commissioners violates the Constitution, their secondary argument that the district court's injunction amounted to an improper, *de facto* reinstatement fails as well.

5

since the Commission was established in 1972. Defendants' contention of irreparable harm by Plaintiff-Commissioners continuing to serve in their Senate-confirmed roles just presupposes a likelihood of success on the merits. As Defendants have not established the latter, they have not satisfied their burden of establishing the former.

By contrast, imposition of a stay would substantially injure both the Plaintiff-Commissioners and the public. The Plaintiff-Commissioners were appointed to serve fixed terms with statutory protections designed to preserve the Commission's independence and partisan balance. Permitting their unlawful removal would thwart that purpose and deprive the public of the Commission's full expertise and oversight. And because the attempted removals were unlawful, the Plaintiff-Commissioners never ceased to lawfully occupy their offices.

The public interest lies in upholding the rule of law and ensuring that federal officers are removed only in accordance with the procedures that Congress lawfully enacted. That interest outweighs the executive's asserted need for immediate control, particularly when the underlying legal question is governed by longstanding precedent that supports the district court's ruling.

To the extent *Wilcox* suggested otherwise, it did so only in reference to the unusual disruption arising from repeated removals and reinstatements of officers during litigation. That concern is not present here.

The Plaintiff-Commissioners served continuously until May 8, 2025, and have resumed their duties since the district court's June 13, 2025 order. *See* Third Decl. of Richard Trumka Jr., ECF No. 29-1. There has been no further interruption in their work,

6

and the district court has already issued a declaratory judgment and a permanent injunction. So, here, the considerations of minimizing disruption and preserving the status quo favor permitting the Plaintiff-Commissioners to continue to perform their statutory duties while this appeal proceeds. Simply put, allowing the Plaintiff-Commissioners to continue in their roles preserves, rather than disrupts, agency operations.

The Supreme Court also stated in *Wilcox* "that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." 145 S. Ct. at 1415. But even assuming this statement would suggest that the equities favor Defendants in this case, the Supreme Court could not have meant that this factor should be weighed so significantly that it be allowed to permanently tip the scales in the executive's favor regardless of the underling merits of the removal and the other *Nken* factors. As with *Humphrey's Executor*, we are obliged to follow *Nken* unless the Supreme Court explicitly overrules it.

In sum, the Constitution is not indifferent to structure. It entrusts Congress with the power to design independent agencies that serves the public interest free from political pressure—so long as they operate within constitutional bounds. Here, Congress lawfully constrained the President's removal authority, and no court has found that constraint unconstitutional.

Accordingly, the district court correctly declined to permit a President—any President—to disregard those limits.

For these reasons, I concur in the denial of the motion to stay.