No. 25-1687

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

MARY BOYLE, ALEXANDER HOEHN-SARIC, and RICHARD TRUMKA, JR.,
*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States;
SCOTT BESSENT, in his official capacity as Secretary of the Treasury; RUSSELL
VOUGHT, in his official capacity as Director of the Office of Management and
Budget; PETER A. FELDMAN, in his official capacity as Acting Chairman of
the U.S. Consumer Product Safety Commission,
*Defendants-Appellants*.

_____

On Appeal from the U.S. District Court for the
District of Maryland, No. 25-1628

_____

**OPENING BRIEF FOR APPELLANTS**

_____

<div style="margin-left:40%">

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
LAURA E. MYRON
DANIEL AGUILAR
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530-0001*
*(202) 305-1754*
*Daniel.J.Aguilar@usdoj.gov*

</div>

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION.................................................................1

INTRODUCTION ..........................................................................................1

STATEMENT OF THE ISSUES ................................................................... 4

STATEMENT OF THE CASE ....................................................................... 5

I.  Statutory Background .......................................................................... 5

II. Factual Background And Prior Proceedings......................................... 6

SUMMARY OF ARGUMENT .................................................................... 10

STANDARD OF REVIEW ......................................................................... 11

ARGUMENT................................................................................................ 11

I.  The President Has Constitutional Authority To Remove
    CPSC Commissioners At Will ............................................................ 11

    A.  The President's Presumptive Power of Removal and Its
        Limited Exceptions.................................................................... 11

    B.  CPSC Commissioners Must Be Removable At Will ..................... 23

II. The District Court Erred In Ordering The Reinstatement Of
    Principal Officers The President Had Already Removed..................... 27

CONCLUSION............................................................................................. 39

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                                              **Page(s)**

*Baker v. Carr,*
  369 U.S. 186 (1962) .......................................................................... 30, 31

*Banks v. Hornak,*
  698 F. App'x 731 (4th Cir. 2017) ................................................... 33

*Barnes v. Kline,*
  759 F.2d 21 (D.C. Cir. 1984) .................................................... 38

*Bessent v. Dellinger,*
  145 S. Ct. 515 (2025) ...................................................... 30, 31

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
  403 U.S. 388 (1971) ........................................................... 19

*Buckley v. Valeo,*
  424 U.S. 1 (1976) ............................................................... 26

*Burke v. Barnes,*
  479 U.S. 361 (1987) .......................................................... 38

*Carlson v. Green,*
  446 U.S. 14 (1980) ............................................................ 20

*CFPB v. Seila Law LLC,*
  923 F.3d 680 (9th Cir. 2019) ............................................... 18

*Cheney v. U.S. District Court for the District of Columbia,*
  542 U.S. 367 (2004) ....................................................... 33-34

*City of Arlington v. FCC,*
  569 U.S. 290 (2013) ............................................................ 16

*Collins v. Yellen,*
  594 U.S. 220 (2021) ...................................... 21, 22, 24, 38

*Consumers' Research v. Consumer Product Safety Commission,*
  98 F.4th 646 (5th Cir. 2024) ........................................... 34-35

*Davis v. Passman*,
   442 U.S. 228 (1979) ................................................................ 19

*Dellinger v. Bessent*,
   2025 WL 887518 (D.C. Cir. March 10, 2025) ........................................ 28

*Duke v. Uniroyal Inc.*,
   928 F.2d 1413 (4th Cir. 1991) ...................................................... 33

*eBay Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006) ...................................................... 3, 11, 35

*Egbert v. Boule*,
   596 U.S. 482 (2022) ............................................................... 20

*Estate of Michael ex rel. Michael v. Lullo*,
   173 F.3d 503 (4th Cir. 1999) ....................................................... 34

*Exela Enterprise Solutions, Inc. v. NLRB*,
   32 F.4th 436 (5th Cir. 2022) ....................................................... 12

*Federal Baseball Club of Baltimore v. National League of
   Professional Baseball Clubs*,
   259 U.S. 200 (1922) ................................................................ 19

*Flast v. Cohen*,
   392 U.S. 83 (1968) .............................................................. 18-19

*Free Enterprise Fund v. Public Company Accounting Oversight
   Board*,
   561 U.S. 477 (2010) ...................................................... 12, 26, 27

*French v. Assurance Company of America*,
   448 F.3d 693 (4th Cir. 2006) ....................................................... 11

*Goldey v. Fields*,
   606 U.S. 942 (2025) ............................................................... 20

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
   527 U.S. 308 (1999) ............................................................... 29

*Haviland v. Butz*,
   543 F.2d 169 (D.C. Cir. 1976) ..................................................... 19

*Heckler v. Ringer*,
   466 U.S. 602 (1984) ........................................................ 33, 34

*Hein v. Freedom From Religion Foundation, Inc.*,
   551 U.S. 587 (2007) .................................................................. 19

*Humphrey's Executor v. United States*,
   295 U.S. 602 (1935) ........................................ 2, 7, 10, 12, 13, 14, 15, 17, 29

*Hunter v. Town of Mocksville*,
   897 F.3d 538 (4th Cir. 2018) ................................................. 33

*In re Cheney*,
   406 F.3d 723 (D.C. Cir. 2005) (en banc) ................................ 34

*In re First Federal Savings and Loan Association of Durham*,
   860 F.2d 135 (4th Cir. 1988) .................................................. 34

*In re Sawyer*,
   124 U.S. 200 (1888) ................................................... 30, 31, 32

*Kennedy v. Braidwood Management, Inc.*,
   145 S. Ct. 2427 (2025) ............................................................ 16

*Mississippi v. Johnson*,
   71 U.S. (4 Wall.) 475 (1867) ................................................. 28

*Morrison v. Olson*,
   487 U.S. 654 (1988) ........................................................ 12, 16

*Myers v. United States*,
   272 U.S. 52 (1926) ......................................................... 13, 29

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................... 35

*Orellana v. Godec*,
   --- F.4th ---, 2025 WL 2151596
   (4th Cir. July 30, 2025) ......................................................... 20

*SAS Institute, Inc. v. World Programming Limited.*,
   874 F.3d 370 (4th Cir. 2017) ................................................. 35

*Seila Law LLC v. CFPB*,
  591 U.S. 197 (2020) ........... 3, 10, 11, 12, 13, 15, 16, 17, 18, 20, 21, 23, 26, 36

*Severino v. Biden*,
  71 F.4th 1038 (D.C. Cir. 2023) ........................................................ 18, 32

*Swan v. Clinton*,
  100 F.3d 973 (D.C. Cir. 1996) ......................................................... 29, 32

*Trump v. United States*,
  603 U.S. 593 (2024) ............................................................. 4, 12, 27, 28

*Trump v. Wilcox*,
  145 S. Ct. 1415 (2025) ............................................................. 4, 9, 36, 37

*United States v. Payne*,
  54 F.4th 748 (4th Cir. 2022) ................................................................ 26

*United States v. Perkins*,
  116 U.S. 483 (1886) .............................................................................. 12

*Walton v. House of Representatives*,
  265 U.S. 487 (1924) .............................................................................. 31

*White v. Berry*,
  171 U.S. 366 (1898) ........................................................................ 30, 31

*Wiener v. United States*,
  357 U.S. 349 (1958) .................................................................... 15, 16, 29

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) .............................................................................. 15

**Constitution Statutes:**

U.S. Const. art. II, § 1, cl. 1 ................................................................ 1

U.S. Const. art. II, § 2, cl. 2 .............................................................. 13

U.S. Const. art. II, § 3 ................................................................... 1, 38

Consumer Product Safety Act,
   Pub. L. No. 92-573, 86 Stat. 1207 (1972) .............................. 5, 25

Consumer Product Safety Commission Improvements Act,
   Pub. L. No. 94-284, 90 Stat. 503 (1976) ................................ 25

15 U.S.C. § 2051 ................................................................. 5

15 U.S.C. § 2051(a)(1), (5) ................................................. 5

15 U.S.C. § 2053 ......................................................... 8, 9, 31

15 U.S.C. § 2053(a)-(b) .............................................. 5, 6, 13

15 U.S.C. § 2053(b)(2) ...................................................... 28

15 U.S.C. § 2056 ................................................................. 3

15 U.S.C. § 2056(a) ...................................................... 5, 23

15 U.S.C. § 2057 ....................................................... 3, 5, 23

15 U.S.C. § 2064(c)-(d) .................................................. 3, 5

15 U.S.C. § 2064(c)-(d)(1) .............................................. 24

15 U.S.C. § 2064(d)(2)-(3) .............................................. 24

15 U.S.C. §§ 2064(g)(1), 2071(a) .................................. 25-26

15 U.S.C. § 2069 ....................................................... 5, 24

15 U.S.C. § 2069(a)(1) ...................................................... 3

15 U.S.C. § 2070 ............................................................... 6

15 U.S.C. § 2070(a) .......................................................... 26

15 U.S.C. § 2071 ....................................................... 6, 25

15 U.S.C. § 2076(b)(7) .............................................. 3, 25

15 U.S.C. § 2076(b)(7)(A) ......................................... 6, 25

15 U.S.C. § 2076(b)(7)(B) .......................................... 3, 6, 26

28 U.S.C. § 1291 ...................................................................... 1

28 U.S.C. § 1361 ................................................................... 33

28 U.S.C. §§ 1331, 1361 ........................................................ 1


**Rules and Regulations:**

16 C.F.R. § 1303.4 ................................................................ 23

16 C.F.R. § 1304.4 ................................................................ 23

16 C.F.R. §§ 1203.1–1203.41 ................................................ 23

16 C.F.R. §§ 1205.1–1205.36 ................................................ 23

16 C.F.R. §§ 1211.1–1211.40 ................................................ 23

16 C.F.R. §§ 1217.1–1217.2 .................................................. 23

86 Fed. Reg. 68244 (Dec. 1, 2021) .................................... 5-6, 24

88 Fed. Reg. 68589 (Oct. 4, 2023) ..................................... 25

88 Fed. Reg. 77566 (Nov. 13, 2023) ................................... 25

89 Fed. Reg. 91366 (Nov. 19, 2024) ................................... 25

90 Fed. Reg. 8201 (Jan. 27, 2025) ...................................... 24

Federal Rule of Civil Procedure 81(b) ................................ 33


**Other:**

CPSC 2024 Annual Report,
    https://perma.cc/H3TC-GUWH ........................................ 6

CPSC 2023 Annual Report,
    https://perma.cc/AY7T-SSKJ .......................................... 6

Order, *Trump v. Boyle*,
  No. 25A11 (U.S. July 23, 2025) ........................................... 2, 9, 10, 36, 37

*Power of the President to Remove Members of the Tennessee*
  *Valley Authority from Office,*
  39 Op. Att'y Gen. 145 (1938) ................................................... 14

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. §§ 1331, 1361. JA2. The district court granted plaintiffs summary judgment and issued declaratory and injunctive relief on June 13, 2025. JA84-85. Defendants filed a timely notice of appeal on June 16, 2025. JA86. This Court has jurisdiction under 28 U.S.C. § 1291.

## INTRODUCTION

This appeal arises from a district court order that reinstates principal officers of the United States whom the President has lawfully removed.

The Constitution vests the entirety of the "executive Power" in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id.* § 3. As the Supreme Court has long held, that executive power encompasses the authority to remove those who aid the President in carrying out his duties. The district court, however, countermanded the President's removal of Mary Boyle, Alexander Hoehn-Saric, and Richard Trumka, Jr., from their positions as Commissioners of the Consumer Product Safety Commission (CPSC), an Executive Branch agency. The court's order reinstated plaintiffs into their former offices, allowing them to wield executive power over the President's objection. The Supreme Court has since stayed plaintiffs' reinstatement

pending appeal, *Trump v. Boyle*, No. 25A11 (U.S. July 23, 2025); but during their reinstatement, plaintiffs rescinded agency actions, fired agency employees, and ordered the agency to stop compliance with the President's Executive Orders. They did so while simultaneously threatening agency staff with contempt of court if the staff hesitated in carrying out plaintiffs' orders. JA103 ("If you chose to ignore the directive of the Commission, I suggest you read the Court order and decide whether you want to personally violate it."). The district court's order—in both principle and application—causes grave harm to the separation of powers and undermines the President's ability to exercise his core Article II authority under the Constitution.

The district court wrongly concluded that because the CPSC is composed of multiple Commissioners, Congress can saddle the President with statutory restrictions that restrict his ability to remove principal officers who have lost his trust. But the district court's reliance on *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), was misplaced. That case recognized a limited exception to the rule of at-will presidential removal for "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was

said *not to exercise any executive power*." *Seila Law LLC v. CFPB*, 591 U.S. 197, 216 (2020) (emphasis added).

This exception does not encompass the CPSC, which plainly exercises substantial executive power. The CPSC promulgates legislative rules that are binding on regulated entities, 15 U.S.C. § 2056; it can ban hazardous products from the marketplace, *id.* § 2057; it adjudicates violations of federal law, *id.* § 2064(c)-(d), (f); it can seek millions of dollars in civil penalties, *id.* § 2069(a)(1); it can file enforcement suits in federal court with its own attorneys, *id.* § 2076(b)(7); and it is empowered to "prosecute * * * through its own legal representative * * * any criminal action" under its jurisdiction with the Attorney General's concurrence, *id.* § 2076(b)(7)(B). Because the CPSC wields "substantial executive power," it does not fall within the narrow *Humphrey's Executor* exception. *Seila Law*, 591 U.S. at 218.

Further, the district court erred in ordering plaintiffs reinstated as principal executive officers. That "permanent injunction" is unavailable under longstanding precedent and is inappropriate because plaintiffs have "remedies available at law, such as monetary damages" in backpay. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Moreover, the balance of hardships and the public interest do not warrant an injunction,

3

as "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025). That is because reinstatement impinges on the President's "conclusive and preclusive" "power of removal in executive agencies," which "disabl[es] the Congress from acting upon the subject," and means that "the courts have 'no power to control [the President's] direction." *Trump v. United States*, 603 U.S. 593, 607 (2024). At bottom, the public interest is best served by permitting the elected President to determine who ought to be entrusted with the Constitution's executive power.

## STATEMENT OF THE ISSUES

**1.** Whether the President has authority under Article II of the Constitution to remove Commissioners of the Consumer Product Safety Commission without first having to bear the burden of establishing neglect of duty or malfeasance in office.

**2.** Whether the district court exceeded its remedial authority in ordering the reinstatement of principal officers the President determined should no longer be entrusted with executive power.

## STATEMENT OF THE CASE

### I.    Statutory Background

Congress created the CPSC in 1972 to regulate consumer products and protect consumers from "unreasonable risks of injury." Consumer Product Safety Act, Pub. L. No. 92-573, § 2(a)(1), (5), 86 Stat. 1207, 1207 (1972) (codified at 15 U.S.C. § 2051 *et seq.*); 15 U.S.C. § 2051(a)(1), (5). The agency is headed by five Commissioners, each nominated by the President and confirmed by the Senate, who serve staggered seven-year terms. 15 U.S.C. § 2053(a)-(b). As relevant here, Congress enacted a statute providing that the Commissioners may be removed by the President during their seven-year terms for "neglect of duty or malfeasance in office but for no other cause." *Id.* § 2053(a).

Congress empowered the CPSC to "promulgate consumer product safety standards" by legislative rule, 15 U.S.C. § 2056(a), and to ban certain hazardous products from commerce entirely, *id.* § 2057. The agency can conduct adjudications to determine whether products pose a substantial hazard and can order the manufacturer to cease distribution and remedy the defect. *Id.* § 2064(c)-(d), (f). The CPSC may seek civil penalties for up to $120,000 per violation and up to $17.15 million in aggregate for violations of the consumer safety laws, *id.* § 2069; 86 Fed. Reg. 68244, 68244 (Dec. 1,

2021). Under that authority, the CPSC reported over $77 million in civil penalty settlements in 2023 and 2024.[1]

The CPSC may file injunctive actions in district court to restrain violations of its regulations, 15 U.S.C. § 2071, and may do so through its own attorneys if the Attorney General declines representation, *id.* § 2076(b)(7)(A). Knowing and willful violations of the Consumer Product Safety Act are crimes punishable by imprisonment, *id.* § 2070, and the CPSC has authority to prosecute "any criminal action" under its jurisdiction "through its own legal representative, with the concurrence of the Attorney General," *id.* § 2076(b)(7)(B).

## II.    Factual Background And Prior Proceedings

**A.** Plaintiffs Boyle, Hoehn-Saric, and Trumka were nominated to serve as CPSC Commissioners by President Biden and subsequently confirmed by the Senate. JA55-56. In May 2025, President Trump removed plaintiffs from their offices as CPSC Commissioners, JA56, without a determination that plaintiffs had neglected their duty or committed malfeasance in office, 15 U.S.C. § 2053(a). Plaintiffs thereafter sued in district court, seeking a declaration and an injunction to halt "any action to

---

[1] CPSC 2024 Annual Report 46-47, https://perma.cc/H3TC-GUWH; CPSC 2023 Annual Report 44, https://perma.cc/AY7T-SSKJ.

effectuate President Donald J. Trump's purported termination of Plaintiffs from their roles as Commissioners." JA57. The district court denied plaintiffs' motion for a temporary restraining order or a preliminary injunction, and the parties filed cross-motions for summary judgment. JA57.

The court granted summary judgment to the plaintiffs and reinstated them to their role as principal officers in the Executive Branch. JA54. The court understood that the President's constitutional authority "generally includes the ability to remove executive officials" and that Congress' "participat[ion] in the exercise of that power would infringe the constitutional principle of the separation of governmental powers." JA59 (quotation marks omitted). Nonetheless, the court held that the statutory restrictions on removing CPSC Commissioners were constitutional under the Supreme Court's decision in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). JA67, JA75.

The court entered a declaratory judgment that the President's removal "is ultra vires, contrary to law, and without legal effect." JA84. The court further enjoined the Treasury Secretary, the Director of the Office of Management and Budget, and the Acting CPSC Chairman from "taking any

7

action to effectuate Plaintiffs' unlawful terminations (until such time as Plaintiffs' terms expire pursuant to 15 U.S.C. § 2053)." JA84.

**B.** The court entered its order on Friday, June 13, 2025. JA84. After being reinstated, the three plaintiffs constituted a majority of the CPSC Commissioners. On the evening of Monday, June 16, plaintiff Trumka moved for the Commission to promptly consider "several time critical matters" on Tuesday morning, June 17. JA104. That included (1) generally declaring all CPSC actions taken while plaintiffs were removed to be "null, void, and of no effect," unless otherwise specified; (2) declaring that a notice of proposed rulemaking approved by two Commissioners was "null and void": (3) immediately providing that "no actions may be taken towards Reduction-in-Force of CPSC staff without a majority vote of the Commission," and any current actions "must be withdrawn immediately": (4) and immediately firing "[a]ny staff who have been hired, detailed, or otherwise placed at CPSC" to implement the President's Executive order regarding the Department of Government Efficiency. JA104-106 (email); JA109-113 (vote package materials).

The Acting CPSC Chairman stated that "in light of the breadth of this proposed language and its potential for extensive disruption," these items should be discussed later after time for deliberation, particularly given the

8

holiday-shortened week "and the ongoing deconflict and recusal analysis."
JA104. Plaintiffs, however, instructed CPSC staff to attend the meeting,
stating that if staff did not attend they would be "ignor[ing] the directive of
the Commission." JA103. Plaintiff Trumka followed this order by stating "I
suggest you [agency staff] read the [district] Court order and decide
whether you want to personally violate it." JA103.

**C.** Amidst plaintiffs' actions, defendants filed a motion for a stay
pending appeal in this Court. The Court denied a stay on July 1, 2025, Dkt.
19, and Judge Wynn authored a concurring opinion stating that the
defendants could not establish a likelihood of success on the merits, *id.* at 3,
and had not demonstrated irreparable injury or that the public interest
supported a stay, *id.* at 6.

Three weeks later, the Supreme Court granted defendants a stay
pending appeal, holding that the CPSC "exercises executive power in a
similar manner as the National Labor Relations Board," Order at 1, *Trump
v. Boyle*, No. 25A11 (U.S. July 23, 2025 (*Boyle* Order), an agency the Court
had already noted likely "exercise[s] considerable executive power," *Trump
v. Wilcox*, 145 S. Ct. 1415, 1415 (2025). The Supreme Court further held that
"the Government faces greater risk of harm from an order allowing a
removed officer to continue exercising the executive power than a

9

wrongfully removed officer faces from being unable to perform her statutory duty." *Boyle* Order at 1.

## SUMMARY OF ARGUMENT

**I.** The Constitution vests the President with the general authority to remove principal executive officers at will. *Seila Law LLC v. CFPB*, 591 U.S. 197, 213-14 (2020). The Supreme Court has recognized two narrow exceptions to the President's removal power—one exception for certain inferior officers (not at issue here), *id.* at 217, and another for multimember agencies that exercise "no part of the executive power" and "do not wield substantial executive power," *id.* at 215, 218. Because the CPSC wields substantial executive power, it does not fit within the narrow exception established by *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and its Commissioners must be removable at will.

**II.** Separately, the district court erred by ordering that plaintiffs be fully reinstated as agency heads. The district courts' orders amount to *de jure* reinstatement beyond the equitable authority of the court. A court may not enjoin the President in performance of his official duties, including the appointment and removal of principal officers. Accordingly, when principal officers have challenged their removals from office, they have historically sought legal remedies like backpay, not reinstatement. The court further

10

erred in concluding mandamus was an alternative remedy, when plaintiffs have not demonstrated a clear entitlement to relief based on a failure to carry out a ministerial duty. Finally, even if plaintiffs could demonstrate they prevail on the merits, equitable considerations weigh sufficiently in favor of the government such that the entry of a permanent injunction was an abuse of discretion.

## STANDARD OF REVIEW

The Court reviews the grant of summary judgment de novo. *French v. Assurance Company of America*, 448 F.3d 693, 700 (4th Cir. 2006). The grant of permanent injunctive relief is reviewed for abuse of discretion. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## ARGUMENT

### I.    The President Has Constitutional Authority To Remove CPSC Commissioners At Will

#### A.    The President's Presumptive Power of Removal and Its Limited Exceptions

**1.** Article II of the Constitution provides that "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II, § 1, cl. 1; *id.* § 3). The President and Vice-President are the only elected officials within the entire Executive Branch, and responsibility to the electorate requires that those wielding the

11

President's executive authority must remain accountable to the President. *Id.* at 224. Accordingly, the President "as a general matter" has "authority to remove those who assist him in carrying out his duties." *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 513-14 (2010). "Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* at 514. It is thus well established that the President's removal power "is essential to the performance of his Article II responsibilities," *Exela Enterprise Solutions, Inc. v. NLRB*, 32 F.4th 436, 445 (5th Cir. 2022), and Congress cannot control the President's "conclusive and preclusive" removal authority "with respect to 'executive officers of the United States whom he has appointed,'" *Trump v. United States*, 603 U.S. 593, 608-09 (2024).

The Supreme Court has "recognized only two exceptions to the President's unrestricted removal power." *Seila Law*, 591 U.S. at 204. First, the Court has held that "Congress could provide tenure protections to certain *inferior* officers with narrowly defined duties." *Id.*[2] Second, *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), held that

---

[2] *See, e.g.*, *United States v. Perkins*, 116 U.S. 483 (1886); *Morrison v. Olson*, 487 U.S. 654 (1988).

Congress could "give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. Those exceptions represent the "outermost constitutional limits of permissible congressional restrictions on the President's removal power" under current precedent. *Id.* at 218.

As the district court noted, JA60, plaintiffs served as principal officers rather than inferior officers: they were appointed by the President with Senate confirmation, *see* U.S. Const. art. II, § 2, cl. 2; 15 U.S.C. 2053(a), oversee their own departments, and are not subservient to any other principal officer. Thus, the relevant question is whether the CPSC can be said to perform only "legislative and judicial functions" and therefore fall within the *Humphrey's Executor* exception. *Seila Law*, 591 U.S. at 216.

In *Humphrey's Executor*, the Supreme Court upheld the constitutionality of a provision prohibiting removal of Federal Trade Commissioners absent "inefficiency, neglect of duty, or malfeasance in office." 295 U.S. at 623. Despite reaffirming the then-recent holding in *Myers v. United States*, 272 U.S. 52 (1926), that the President has "unrestrictable power * * * to remove purely executive officers," the Court concluded that *Myers* did not control because the FTC Commissioner at

13

issue was "an officer who occupies no place in the executive department and who exercises no part of the executive power vested by the Constitution in the President." *Humphrey's Executor*, 295 U.S. at 628, 632. Instead, *Humphrey's Executor* understood the FTC to be a "body" that "carr[ied] into effect legislative policies" and "perform[ed] other specified duties as a legislative or as a judicial aid." *Id.* at 628. Those duties, according to the Court, "c[ould] not in any proper sense be characterized as an arm or an eye of the executive." *Id.* The Court understood the FTC not to be exercising executive power at all but rather to "ac[t] in part quasi legislatively and in part quasi judicially." *Id.* On that understanding, *Humphrey's Executor* upheld the provision restricting the removal of FTC Commissioners.

Soon after *Humphrey's Executor* was decided, its reach across the Executive Branch was understood to be limited. In 1938, Attorney General Robert Jackson explained that *Humphrey's Executor* did not apply to the Tennessee Valley Authority, which "does not exercise quasi-legislative or quasi-judicial functions," and thus the President enjoyed his "ordinary power to remove executive officers appointed by him." *Power of the President to Remove Members of the Tennessee Valley Authority from Office*, 39 Op. Att'y Gen. 145, 146-47 (1938). Thus, whatever the bounds "of congressional control" for quasi-judicial, quasi-legislative agencies, the

14

President's "exclusive power of removal in executive agencies * * * continued to be asserted and maintained." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 638 n.4 (1952) (Jackson, J., concurring). That limitation was reiterated in *Seila Law*, which explained that *Humphrey's Executor* is limited to "multimember bodies with 'quasi-judicial' or 'quasi-legislative' functions" that exercise no executive power. 591 U.S. at 216-17 (quoting *Humphrey's Executor*, 295 U.S. at 632).

Under *Humphrey's Executor*, the Supreme Court has sustained removal restrictions for the head of an executive agency on a single occasion. In *Wiener v. United States*, 357 U.S. 349 (1958), the Court held that the President lacked authority to remove a member of the War Claims Commission—a temporary agency created solely to hear and adjudicate benefits claims for "internees, prisoners of war, and religious organizations" who suffered injury "at the hands of the enemy" in World War II. *Id.* at 349-50. Although Congress did not impose any statutory removal restrictions, *id.* at 352, the Court held that the Commission's "tasks require absolute freedom from Executive interference," *id.* at 353. The

Court thus held that the President could not remove a member of the Commission under "[t]he philosophy of *Humphrey's Executor*." *Id.* at 356.[3]

But the assumption on which *Humphrey's Executor* and *Wiener* rest—that those agencies' "quasi-legislative" and "quasi-judicial" powers were not actually executive power under the Constitution—has since been "repudiated" by the Supreme Court. *Seila Law*, 591 U.S. at 239 (Thomas, J., concurring in part and dissenting in part). Executive agencies "since the beginning of the Republic" have made rules and conducted adjudications. *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013). While "[t]hese activities take 'legislative' and 'judicial' forms," they remain "exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive Power.'" *Id.* In other words, *Humphrey's Executor*'s conclusion that the 1935 FTC "did not exercise executive power has not withstood the test of time," *Seila Law*, 591 U.S. at 216 n.2, and "it is hard to dispute that" the agency's powers "would at the present time be considered 'executive,' at least to some degree," *Morrison v. Olson*, 487 U.S. 654, 689 n.28, 691 (1988).

---

[3] The Supreme Court has since made clear that it will not infer removal restrictions, and Congress must "use very clear and explicit language" to "take away the power of at-will removal from an appointing officer." *Kennedy v. Braidwood Management, Inc.*, 145 S. Ct. 2427, 2448 (2025) (quotation marks omitted).

The district court recognized that *Humphrey's Executor* rests on repudiated reasoning, JA61 n.3, and so the decision can be understood as precedential only as to the specific question it resolved. Nothing in *Humphrey's Executor*'s holding establishes a categorical approval for removal protections for multimember agencies that exercise materially different and materially greater executive power than the 1935 FTC.

Indeed, *Seila Law* confirms that *Humphrey's Executor*'s holding does not even include "latent powers that the [1935 FTC] may have had" but which were "not alluded to by the Court." *Seila Law*, 591 U.S. at 219 n4. The Court instructed that *Humphrey's Executor* must be understood "on its own terms," *id.*, and that it approved removal restrictions for "an officer who occupies no place in the executive department and who exercises no part of the executive power," *Humphrey's Executor*, 295 U.S. at 628. Thus, while the *Seila Law* dissenters and the district court here, JA70 n.6, detailed the various and substantial executive powers that the 1935 FTC possessed, including investigations, enforcement actions, adjudications, rulemaking, and litigation authority, *Seila Law*, 591 U.S. at 286 n.10 (Kagan, J., concurring in the judgment with respect to severability and dissenting in part), the Court explained that "what matters" for judging the constitutionality of different agencies "is the set of powers the [*Humphrey's*

*Executor*] Court considered as the basis for its decision," *id.* at 219 n.4 (majority opinion).

As the district court noted, the CPSC undoubtedly "wields executive power," through a "varied set of functions and powers," JA73, that are meaningfully different and greater than those considered in *Humphrey's Executor*. The district court erred in adopting an overbroad reading of that case, *see* JA68-75, stretching it beyond its facts to uphold removal protections for an agency that "possesses substantially more executive power than the FTC did back in 1935." *CFPB v. Seila Law LLC*, 923 F.3d 680, 683 (9th Cir. 2019) (upholding the CFPB's removal restrictions), *vacated and remanded*, 591 U.S. 197. *Humphrey's Executor* does not extend so far, and after *Seila Law*, "only a very narrow reading of" that case "is still good law," meaning there is little "left of the *Humphrey's* exception to the general rule that the President may freely remove his subordinates." *Severino v. Biden*, 71 F.4th 1038, 1050 (D.C. Cir. 2023) (Walker, J., concurring).

Reading *Humphrey's Executor* as confined to the precise considerations then before the Court is consistent with how the Supreme Court and courts of appeals have applied binding precedent whose underlying foundations have since been eroded. For example, *Flast v.*

*Cohen*, 392 U.S. 83 (1968), held that taxpayers have standing to challenge statutes "authorizing the use of federal funds in a way that allegedly violates the Establishment Clause," *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 593 (2007) (plurality opinion). But the Supreme Court has refused to extend *Flast* to encompass other alleged violations of the Constitution or to executive expenditures not dictated by statute. *Id.* at 609-10 (collecting cases). Instead, *Flast* has a "narrow application" and "has largely been confined to its facts." *Id.* at 609.

The courts have likewise narrowly applied *Federal Baseball Club of Baltimore v. National League of Professional Baseball Clubs*, 259 U.S. 200 (1922), which held that the sport of baseball was not subject to the antitrust laws, reasoning that baseball games were played and completed in a single state and thus were not interstate commerce even if teams continually travelled across state lines. *Id.* at 208-09. The Supreme Court has since rejected that understanding of interstate commerce, and it is "clear * * * the principle enunciated in *Federal Baseball* * * * is not to be extended to other businesses." *Haviland v. Butz*, 543 F.2d 169, 175 (D.C. Cir. 1976).

Similarly, the Supreme Court has held that under circumstances presented in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979);

19

and *Carlson v. Green*, 446 U.S. 14 (1980), courts may infer a damages cause of action directly under the Constitution. But the Court has stressed that, if there is "any reason to think that Congress might be better equipped to create a damages remedy," the courts may extend those cases no further. *Egbert v. Boule*, 596 U.S. 482, 492 (2022); *accord Goldey v. Fields*, 606 U.S. 942, 944 (2025). Accordingly, this Court has explained that "expanding the *Bivens* remedy to a new context is an extraordinary act that will be unavailable in most every case." *Orellana v. Godec*, --- F.4th ---, 2025 WL 2151596, at *3 (4th Cir. July 30, 2025) (quotation marks omitted).

**2.** The district court mistakenly read *Seila Law* as ratifying a rule more tolerant of removal protections for the heads of multimember agencies. In particular, it attributed undue significance to *Seila Law*'s comment that its "severability analysis does not foreclose Congress from pursuing alternative responses," such as attempting to "remed[y] the defect" by "converting the CFPB into a multimember agency." *Seila Law*, 591 U.S. at 237; *see* JA72 & n.7. But the Supreme Court explained that it "lack[ed] the authority to provide" such a legislative change, as severance was the Court's only "blunt" instrument. 591 U.S. at 237-38. The Court did not purport to pass on the constitutionality of a hypothetical CFPB reconstituted as a multimember commission that *did* "wield substantial

20

executive power," in contravention of the "outermost constitutional limits" the Court had just reiterated. *Id.* at 218.

The district court's overreading of *Seila Law*'s severability analysis produces implausible results that the Supreme Court cannot have intended. If the President can be restricted from removing principal officers from multimember bodies without regard to the significance of the authority they exercise, Congress could convert the Departments of Defense, State, and Justice into multimember commissions insulated from the President's control. *Seila Law*'s tentative observation that "there may be means of remedying the defect in the CFPB's structure," 591 U.S. at 237, cannot reasonably be read to countenance such a result.

Accordingly, because the CPSC exercises "substantial executive power," *Seila Law*, 591 U.S. at 218, it falls outside the exception for multimember agencies recognized in *Seila Law*. Indeed, even this articulation of the test may be overly tolerant of restrictions on the President's removal authority. After *Seila Law*, the Supreme Court clarified that "Courts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies, and we do not think that the constitutionality of removal restrictions hinges on such an inquiry." *Collins v. Yellen*, 594 U.S. 220, 253 (2021); *see also id.* at 273

(Kagan, J., concurring in part and concurring in the judgment) (stating that the *Collins* majority "extend[ed]" *Seila Law*'s holding and dropped the qualifier of "significant" executive power); *id.* at 293 (Sotomayor, J., concurring in part and dissenting in part) (noting that the "words" "significant executive power" "appear nowhere in today's decision"). Under this articulation, any exercise of executive power subjects an agency head to the President's control.

The district court mistakenly invoked this reasoning to support its conclusion that the CPSC's removal restrictions should be upheld. JA73. But the point in *Collins* was that once the Court had determined that a federal agency exercised executive power, it presumptively fell within the President's control of at-will removal, and courts are not well suited to craft judicial exceptions to the Constitution's structure for the chain-of-command in the Executive Branch. "At-will removal ensures that" principal officers "will depend, as they ought, on the President, and the President on the community" and "[t]hese purposes are implicated whenever an agency does important work," which courts are not "well-suited" to weigh and compare. *Collins*, 594 U.S. at 252-53. Because the CPSC exercises substantial executive authority, *see infra* pp.23-27, under any articulation

of the test, the statutory limitations on the President's removal of CPSC
Commissioners are invalid.

**B.    CPSC Commissioners Must Be Removable At Will**

The CPSC wields substantial executive authority and is not a "mere
legislative or judicial aid." *Seila Law*, 591 U.S. at 218-19. It enacts
substantive rules that bind the regulated public, engages in significant
executive adjudication, and can conduct both civil litigation and criminal
prosecution in federal courts. Given those varied and substantial executive
powers, Congress may not restrict the President's constitutional authority
to remove the agency's Commissioner's.

The CPSC is authorized to discharge quintessential executive duties.
CPSC promulgates safety standards that bind manufacturers and
distributors of commercial products, 15 U.S.C. § 2056(a), and thus sets the
relevant safety standards for a variety of goods sold within the United
States, from bicycle helmets, 16 C.F.R. §§ 1203.1–1203.41, to lawn mowers,
*id.* §§ 1205.1–1205.36, to automatic garage doors, *id.* §§ 1211.1–1211.40, to
toddler beds, *id.* §§ 1217.1–1217.2. The agency can entirely ban hazardous
products outright, 15 U.S.C. § 2057, and has accordingly banned lead paint,
16 C.F.R. § 1303.4, and asbestos in consumer patching compounds, *id.*
§ 1304.4. These regulatory actions—that set the minimum standards for

domestic goods used throughout the country—are "clearly exercises [of] executive power" because they represent the CPSC's ability "to issue a 'regulation or order.'" *Collins*, 594 U.S. at 254.

The CPSC may adjudicate whether products pose a substantial hazard and, if so, can order the product's manufacturer, distributor, or retailer to (a) repair the product or otherwise bring it into compliance with the CPSC's safety standards, (b) replace the product with a compliant equivalent product, or (c) refund customers who bought the defective product. 15 U.S.C. § 2064(c)-(d)(1). The CPSC can further require a regulated party to prepare and submit a plan for corrective action, and can determine whether the party has substantially complied with its plan. *Id*. § 2064(d)(2)-(3).

The CPSC can also seek money penalties for knowing violations of the Consumer Product Safety Act. 15 U.S.C. § 2069. A single violation of the Act can warrant a penalty of up to $120,000, while a series of violations can result in a maximum penalty of $17.15 million. *Id.*; 86 Fed. Reg. 68244, 68244 (Dec. 1, 2021). Under this authority, the CPSC has negotiated numerous settlements that impose millions of dollars for statutory violations.[4]

---

[4] *See, e.g.*, 90 Fed. Reg. 8201, 8201-02 (Jan. 27, 2025) (settlement order requiring FitBit, LLC, to pay $12.25 million for allegedly defective

The CPSC may bring suits to enjoin violations of the Consumer Product Safety Act and to condemn products that fail to comply with the agency's safety standards. 15 U.S.C. § 2071. Although Congress initially required any CPSC actions to be initiated "with the concurrence of the Attorney General," Pub. L. No. 92-573, § 22(a), 86 Stat. 1207, 1226 (1972), Congress eliminated that requirement in 1976, *see* Pub. L. No. 94-284, § 11, 90 Stat. 503, 507. Instead, the CPSC may "request" representation by the Department of Justice in a civil action. 15 U.S.C. § 2076(b)(7)(A). If the Attorney General does not agree to representation within 45 days, then the CPSC may "initiate, prosecute, defend, [and] appeal" the action "through its own legal representative and in the name of the Commission" before the district courts and the courts of appeals. *Id.* And even these minimal procedural requirements do not apply for suits seeking preliminary and permanent injunctive relief, where the CPSC may initiate suit and represent itself "without regard to section 2076(b)(7) of this title." *Id.* §§ 2064(g)(1),

---

products that caused second and third degree burns); 89 Fed. Reg. 91366, 91366-67 (Nov. 19, 2024) (settlement order requiring Bestar, Inc. to pay $16.025 million for allegedly defective furniture that can detach from walls and fall on people); 88 Fed. Reg. 77566, 77566 (Nov. 13, 2023) (settlement order requiring HSN, Inc. to pay $16 million for allegedly defective clothes steamers that caused burns and injuries); 88 Fed. Reg. 68589, 68589 (Oct. 4, 2023) (settlement order requiring BJ's Wholesale Club, Inc. to pay $9 million for allegedly defective air conditioners that can catch fire).

2071(a). "A lawsuit is the ultimate remedy for a breach of the law, and it is to the President, and not to the Congress, that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'" *Buckley v. Valeo*, 424 U.S. 1, 138 (1976).

The CPSC additionally wields the "core" and "quintessentially" executive power of "[c]riminal prosecution." *United States v. Payne*, 54 F.4th 748, 755 (4th Cir. 2022). Knowing and willful violations of the Act are punishable by up to 5 years' imprisonment, 15 U.S.C. § 2070(a), and the CPSC may "initiate, prosecute, or appeal, through its own legal representative * * * any criminal action" with "the concurrence of the Attorney General," *id.* § 2076(b)(7)(B). The CPSC's criminal and civil enforcement authority—with and without oversight from the Department of Justice—is a "quintessentially executive power not considered in *Humphrey's Executor.*" *Seila Law*, 591 U.S. at 219.

The district court mistakenly believed that this authority to litigate and prosecute was immaterial because the Attorney General had to consent to—or at least be aware of—the CPSC's actions. JA70-71. But this "diffusion of power carries with it a diffusion of accountability." *Free Enterprise*, 561 U.S. at 497. Decisions made about which cases to bring, which to decline, and how to litigate and prosecute matters require "a clear and effective

26

chain of command" so that the President and the public can determine who deserves praise or blame. *Id.* at 498. The statute clearly vests the politically insulated CPSC Commissioners with authority to prosecute crimes and sue the public in federal court, thus insulating their decisions from direct and robust oversight from the Chief Executive. "This violates the basic principle that the President cannot delegate ultimate responsibility or the active obligation to supervise" the actions of the Executive Branch. *Id.* at 496 (quotation marks omitted). The Constitution requires that the Executive Branch have "exclusive authority and absolute discretion" over criminal prosecutions, which correspondingly requires that the President must have unrestricted authority to remove those responsible for such prosecutorial decisions. *Trump*, 603 U.S. at 620-21 (citing the President's "conclusive and preclusive" removal authority).

## II. The District Court Erred In Ordering The Reinstatement Of Principal Officers The President Had Already Removed

**A.** The district court further erred by ordering that plaintiffs' removal is "without legal effect," JA84, issued "a permanent injunction reinstating Plaintiffs to their positions," JA80, and held that plaintiffs may "serv[e] out the remainder of their limited terms," JA79. Under the court's order, then, plaintiffs will continue serving as principal executive officers until October 2025, October 2027, and October 2028, JA55-56, even though the

27

President has determined that they ought not be entrusted with executive authority. And plaintiffs may even continue serving for a year after their terms end if the Senate has not confirmed their respective successors. 15 U.S.C. § 2053(b)(2).

This *de jure* reinstatement of a principal officer is beyond the equitable authority of the court to impose because reinstatement impinges on the President's "conclusive and preclusive" "power of removal in executive agencies," which "disabl[es] the Congress from acting upon the subject," and means that "the courts have 'no power to control [the President's] discretion.'" *Trump*, 603 U.S. at 607. There would be no doubt of "grave and irreparable" injury if the district court had ordered reinstatement of a dismissed Secretary of State, and any differences between the Department of State and the CPSC "g[o] to the extent—not the character—of the President's injury." *Dellinger v. Bessent*, 2025 WL 887518, at *3 (D.C. Cir. March 10, 2025). The grant of an impermissibly broad remedy is an independent basis for this Court to reverse the district court's order.

The Supreme Court recognized long ago that a court "has no jurisdiction * * * to enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867). The

28

appointment and removal of principal officers is specifically entrusted to the President, *see Swan v. Clinton*, 100 F.3d 973, 979 (D.C. Cir. 1996) (recognizing that "principal officers of the United States * * * must be appointed, and removed, by the President"), and thus a court may not, by injunction, order the reinstatement of a principal officer the President has removed. Accordingly, when principal officers have been removed from their posts, they generally have challenged that removal in suits for backpay. *See Humphrey's Executor*, 295 U.S. at 618 (challenge sought "to recover a sum of money alleged to be due"); *Myers*, 272 U.S. at 106 (same); *Wiener*, 357 U.S. at 349-51 (same). That rule reflects the obvious Article II problems that arise if a court attempts to reinstate—that is, reappoint—a principal executive officer removed by the President. The President cannot be compelled to retain the services of a principal officer whom he has removed from office.

Moreover, to the extent the district court concluded that injunctions against the President's subordinates pose no problem, *see* JA77, a federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). Reinstatement of a public official is not such a remedy. "It is * * * well settled that a court of

29

equity has no jurisdiction over the appointment and removal of public officers." *In re Sawyer*, 124 U.S. 200, 212 (1888). Thus, "the power of a court of equity to restrain by injunction the removal of a [public] officer has been denied in many well-considered cases." *Id.*; *see, e.g.*, *Baker v. Carr*, 369 U.S. 186, 231 (1962) (decisions that "held that federal equity power could not be exercised to enjoin a state proceeding to remove a public officer" or that "withheld federal equity from staying removal of a *federal* officer" reflect "a traditional limit upon equity jurisdiction"); *White v. Berry*, 171 U.S. 366, 377 (1898) ("[A] court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another."); *accord Bessent v. Dellinger*, 145 S. Ct. 515, 517 (2025) (Gorsuch, J., dissenting) (observing that "courts of equity at the time of the founding were apparently powerless" to stop the removal of executive officers).

The district court's order cannot be squared with these precedents. The court declared that the President's removal was "effectively invalid as a matter of law," JA77, ordered the removal was "without legal effect," and enjoined subordinate officials from "taking any action to effectuate Plaintiffs' unlawful terminations (until such time as Plaintiffs' terms expire

30

pursuant to 15 U.S.C. § 2053),” JA84. This amounts to *de jure* reinstatement.

These equitable principles precluding reinstatement of a removed officer apply equally to subordinates. Nothing in *Baker* or *Sawyer* suggests that the longstanding principle that “traditional limit[s] upon equity jurisdiction” prohibit a court from “staying removal of a federal officer” do not apply as long as an injunction runs to a subordinate officer. *See Baker*, 369 U.S. at 231 (citing *In re Sawyer*, 124 U.S. 200; and then citing *Walton v. House of Representatives*, 265 U.S. 487 (1924); *White v. Berry*, 171 U.S. 366). Plus, only the President has the authority to appoint, remove, and supervise agency heads, so any relief ordered by the Court that prevents plaintiffs’ removal necessarily targets the President. *Dellinger*, 145 S. Ct. at 516 (Gorsuch, J., dissenting) (explaining that a reinstatement order “effectively command[s] the President * * * to recognize and work with someone whom the President sought to remove from office”). Regardless of whom the order formally applies to, and however styled, an order that has the effect of reinstating a principal executive officer removed by the President violates both Article II and the limits on a court’s equitable powers

31

The district court held that reinstatement was "available" based on the D.C. Circuit's decisions in *Swan* and *Severino*. JA77. But those nonbinding decisions did not uphold or countenance reinstatement orders on the merits. Rather, those cases considered only the court of appeals' *jurisdiction* over an official's challenge to his removal. *See Severino*, 71 F.4th at 1042; *Swan*, 100 F.3d at 981. And the court's jurisdictional conclusions did not require "deciding whether an injunction ordering a presidential appointment would be available or appropriate." *Severino*, 71 F.4th at 1042; *Swan*, 100 F.3d at 980-81 (holding that the President's removal was proper). At most those cases can be read to stand for the proposition that equitable relief might be available to require a subordinate officer to allow a plaintiff to exercise some of the privileges of the office such as by "including [him] in Board meetings," or "giving him access to his former office." *Swan*, 100 F.3d at 980; *see also Severino*, 71 F.4th at 1043. The district court's order here goes well beyond such *de facto* relief; it puts plaintiffs back in office and orders that they shall continue to serve as a *de jure* Commissioners until the conclusion of their terms. In any event, those cases did not consider and do not conflict with the separate longstanding principle that equitable power may not be used to "restrain by injunction the removal of a [public] officer," *In re Sawyer*, 124 U.S. at 212.

32

The district court further erred in relying on cases like *Hunter v. Town of Mocksville*, 897 F.3d 538 (4th Cir. 2018) and *Duke v. Uniroyal Inc.*, 928 F.2d 1413 (4th Cir. 1991), to support its reinstatement order. JA80. *Hunter* and *Duke* concerned a court's ability to reinstate officers of a municipal entity or employees of a private company. Those cases do not consider the unique separation-of-powers concerns that accompany a court using its equitable authority to reinstate an official entrusted with the extensive discretion vested in a principal executive officer.

**B.** While the district court declined to enter a writ of mandamus, JA79 n.10, the court held in the alternative that if injunctive relief were unavailable, then a writ of mandamus would be appropriate, JA81-82. For the reasons explained above, plaintiffs cannot show that they have a "clear" right to relief. *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).[5]

This Court should not construe the district courts' injunctions as relief in the nature of mandamus, nor should it affirm on the alternative ground that mandamus relief would be available. Mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney*

---

[5] Federal Rule of Civil Procedure 81(b) "abolished the common law writ of mandamus" in district courts, but courts may still hear "action[s] in the nature of mandamus" under 28 U.S.C. § 1361. *Banks v. Hornak*, 698 F. App'x 731, 737 n.6 (4th Cir. 2017).

*v. U.S. District Court for the  District of Columbia*, 542 U.S. 367, 380 (2004) (quotation marks omitted). It requires that plaintiffs establish (1) "a clear right to the relief sought"; (2) that the defendants have "a clear duty to do the particular act requested"; and (3) that "no other adequate remedy is available." *In re First Federal Savings and Loan Association of Durham*, 860 F.2d 135, 138 (4th Cir. 1988). Mandamus against a public official will not be granted unless it involved "a mandatory or ministerial obligation which is so plainly prescribed as to be free of doubt." *Id.* Plaintiffs have not established that the President owes them a "clear nondiscretionary duty," to reinstate them to office. *Heckler*, 466 U.S. at 616. The President's selection of who should lead an Executive Branch agency is certainly not a mere ministerial task. Moreover, plaintiffs have alternative remedies, including actions for backpay. Mandamus would not be appropriate.

Moreover, the right to mandamus "may turn on equitable considerations," *Estate of Michael ex rel. Michael v. Lullo*, 173 F.3d 503, 513 (4th Cir. 1999), and a court's decision to grant mandamus is discretionary "even if the plaintiff overcomes all these hurdles," *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc). After *Seila Law*, the removal restrictions here are unconstitutional—and at a minimum their constitutionality is highly suspect. *Cf. Consumers' Research v. Consumer*

34

*Product Safety Commission*, 98 F.4th 646, 650 (5th Cir. 2024) (Oldham, J., joined by seven other judges, dissenting from the denial of rehearing en banc). Especially given that the equitable factors weigh decisively in the government's favor, mandamus would not be proper.

**C.** Even where a plaintiff has prevailed on the merits, "[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *accord SAS Institute, Inc. v. World Programming Limited.*, 874 F.3d 370, 385 (4th Cir. 2017) (applying *eBay*). Thus, even if the Court concludes that plaintiffs should prevail on the merits, it should reverse the grants of permanent injunctions because the courts abused their discretion in granting equitable relief to reinstate plaintiffs. This Court has made clear that when granting a permanent injunction, the district court must consider "the balance of hardships between the plaintiff and defendant" and whether "the public interest would not be disserved by a permanent injunction." *SAS Institute*, 874 F.3d at 385. The public interest and balance of equities factors merge where, as here, the government is the defendant. JA78 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

35

The equitable factors likewise weigh decisively in the government's favor. In *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025), the Supreme Court stayed district court orders reinstating members of the Merit Systems Protection Board and National Labor Relations Board, and premised that stay on its observation that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." And the Supreme Court reiterated that the equitable calculus is identical here. Order at 1, *Trump v. Boyle*, No. 25A11 (U.S. July 23, 2025) (*Boyle* Order).

The district court's order works an extraordinary harm to the President's authority to exercise "all of" "the 'executive Power'" of the United States. *Seila Law*, 590 U.S. at 203. As a result of these orders, three people whom the President has chosen to remove from office will exercise executive power over the President's objection. Indeed, plaintiffs moved quickly and decisively to use their regained power to undo actions of the Commissioners who have retained the President's trust, and to frustrate the CPSC's compliance with the President's executive orders. *See supra* pp.8-9. That sort of harm to the Executive, and to the separation of powers, is transparently irreparable.

36

It is accordingly unsurprising that the Supreme Court has emphasized that the equities decisively favor the government while staying orders (including this one) that reinstate principal officers. In *Wilcox*, the Court granted immediate interim relief to the government, holding that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." 145 S. Ct. at 1415. And in staying the district court's order here, the Court explained that "[t]he same [analysis] is true on the facts presented here, where the Consumer Product Safety Commission exercises executive power in a similar manner as the National Labor Relations Board, and the case does not otherwise differ from *Wilcox* in any pertinent respect." *Boyle* Order at 1.

Conversely, forgoing reinstatement would not harm plaintiffs. Although removal deprives them of employment and salary, the traditional remedy for such claims has been an award of backpay, not reinstatement. Backpay would not enable plaintiffs to perform the duties of their former offices, but those duties are vested in the offices, and plaintiffs have no personal right to exercise the powers of an office after having been removed. The notion that public officials "have a separate private right,

37

akin to a property interest, in the powers of their offices" is "alien to the concept of a republican form of government." *Barnes v. Kline*, 759 F.2d 21, 50 (D.C. Cir. 1984) (Bork, J., dissenting), *judgment vacated sub nom. Burke v. Barnes*, 479 U.S. 361 (1987). Executive power belongs to the President, not to plaintiffs.

Finally, if the government prevails after all review, any actions taken by the CPSC with plaintiffs as reinstated Commissioners will be called into question and potentially voidable, upsetting expectations and risking placing regulated parties in a whipsaw. *See Collins*, 594 U.S. at 259-60 (explaining that plaintiffs contesting agency action based on unconstitutional removal restrictions can show "compensable harm" if "the President had attempted to remove [an agency head] but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal"). The need for the CPSC in the future to reconsider those prior actions may interfere with its ability to timely process other pending matters. Plaintiffs' claimed equities cannot outweigh the grave and unprecedented harm this injunction causes to the separation of powers and the President's authority to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

38

## CONCLUSION

The district court's judgment should be reversed.

Respectfully submitted.

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney*
  *General*

MARK R. FREEMAN
MICHAEL S. RAAB
LAURA E. MYRON
*/s/ Daniel Aguilar*
DANIEL AGUILAR
*Attorneys, Appellate Staff*
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001
(202) 305-1754
Daniel.J.Aguilar@usdoj.gov

AUGUST 2025

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Georgia, a proportionally spaced font. I further certify that this brief complies with the type-volume limitation of Circuit Rule 32-1(a) because it contains 8,106 words, excluding the parts of the brief exempted under Rule 32(f), according to the count of Microsoft Word 2016.


*/s/ Daniel Aguilar*
Daniel Aguilar